IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY MARCHESE,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Case No. 20-244<br>)<br>)<br>)<br>)<br>) |

ORDER

AND NOW, this 2nd day of June, 2021, upon consideration of the parties' cross-motions for summary judgment, the Court will grant Defendant's motion except as to costs.[1] The Court has reviewed the Commissioner of Social Security's final decision denying Plaintiff's application for disability insurance benefits and supplemental security income, pursuant to Titles II and XVI of the Social Security Act ("Act"), and finds the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir.1988)); *Davis v. Heckler*, 601 F. Supp. 824, 825 (W.D. Pa. 1985) ("We may not reweigh the evidence.").[2]

---

[1] Although in its summary judgment motion Defendant requests judgment against Plaintiff "together with costs being taxed against Plaintiff" (Doc. No. 17), Defendant does not address costs in its accompanying brief. Thus, the Court will not address costs, *see Pa. Dep't of Public Welfare v. U.S. Dep't of Health & Human Servs.*, 101 F.3d 939, 945 (3d Cir. 1996), and will grant Defendant's motion except as to its request that costs be taxed against Plaintiff.

[2] Plaintiff challenges the underlying decision by alleging the Administrative Law Judge's ("ALJ") credibility finding is unsupported by substantial evidence. In Plaintiff's view, the ALJ's failure to give due credit to Plaintiff's representation of his symptoms resulted in an inaccurate assessment of the functional limitations arising from Plaintiff's mental health impairments that

ought to have been included in Plaintiff's residual functional capacity ("RFC"). To the contrary, the Court finds the ALJ's findings are supported by substantial evidence. Therefore, the Court will not disturb the ALJ's determination of non-disability.

The substantial evidence standard prevents this Court from upsetting an ALJ's findings unless they lack support of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154. Though this "threshold for . . . evidentiary sufficiency is not high," *id.*, it is not so deferential as to permit an ALJ to decide a matter without "specify[ing] the reasons or basis for the decision." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). An ALJ's explanation of the reasons for his decision is adequate if it includes "an expression of the evidence [the ALJ] considered which supports the result," as well as "some indication of the evidence which was rejected." *Id.*; *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979) (citing *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974)) (explaining that an ALJ's findings should be "as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based.").

When an ALJ considers a claimant's representation of his symptoms, the ALJ must first determine whether "a medically determinable impairment . . . could reasonably be expected to produce the symptoms" alleged. *Baum v. Colvin*, No. CV 15-277-E, 2017 WL 1090790, at *1 n.1 (W.D. Pa. Mar. 22, 2017) (citing 20 C.F.R. § 404.1529(b)); *Cosme v. Comm'r Soc. Sec.*, 845 F. App'x 128, 133 (3d Cir. 2021) ("A claimant's own statements about pain or symptoms are not, by themselves, sufficient to establish that he is disabled."); 20 C.F.R. § 416.929(a). If the claimant satisfies that initial inquiry, then the ALJ will "evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which those symptoms limit his or her ability to work." *Baum*, 2017 WL 1090790, at *1 n.1 (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

In this case, the ALJ found Plaintiff suffered from several severe, medically determinable mental health impairments—bipolar disorder, anxiety, and posttraumatic stress disorder (PTSD)—that could produce some of Plaintiff's alleged symptoms. (R. 18, 20). However, evaluating the extent of Plaintiff's symptoms, the ALJ further found Plaintiff did "not present as a consistent or reliable informant with regard to his impairment-related complaints" (R. 21), and therefore did not find Plaintiff as limited as Plaintiff represented himself to be. (R. 20). In support of that unfavorable finding, the ALJ set out the inconsistencies he perceived in the record in his decision, primarily at R. 21. There, the ALJ pointed out that Plaintiff indicated experiencing an onset of depression as early as March 2013 but failed to allege any mental health impairments in his August 2016 application for benefits. (R. 21). The ALJ noted that Plaintiff at times said he felt "numb" and, at others, depressed while experiencing nightmares and other manifestations of trauma. (R. 21). The ALJ further noted many instances in Plaintiff's medical history where indicia of depression, anxiety, insomnia, and stress were noticeably lacking. (R. 21). These were the inconsistencies that led the ALJ to conclude that Plaintiff's representation of his symptoms' extent could not be relied upon. (R. 21).

Plaintiff challenges that assessment of his consistency and reliability, *i.e.*, his credibility. The Court notes that the Social Security Administration has clarified that "credibility" is not an appropriate term for "subjective symptom evaluation." Soc. Sec. Ruling 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims* (S.S.A. Oct. 25, 2017). This is because subjective symptom evaluation is not meant to be "an examination of an individual's character," but rather an inquiry into whether a claimant's statements about their symptoms "are consistent with objective medical evidence and the other evidence." *Id.* That said, an ALJ's finding as to a claimant's representation of his symptoms is generally afforded "significant deference." *Lowry v. Colvin*, No. CV 15-997, 2016 WL 5253331, at *1 n.1 (W.D. Pa. Sept. 22, 2016) (citing *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003)). Bearing that deference in mind, the Court turns to the Plaintiff's argument that the ALJ's finding is unsupported by substantial evidence. Plaintiff predicates his argument on several alleged errors, each of which the Court will address in turn.

One of the inconsistencies the ALJ perceived in the record was Plaintiff's depression timeline. The ALJ noted that while Plaintiff alleged experiencing depression since March 2013, he delayed seeking treatment until after he applied for disability benefits in August 2016. (R. 21). The ALJ further noted that, according to Plaintiff's timeline, he would have been working at least two years "despite . . . concurrent symptoms." (R. 21). Plaintiff argues any delay of treatment should not have been deemed an inconsistency because the delay was overshadowed by Plaintiff's subsequent treatment at Chestnut Ridge Counseling Services ("CRCS"). (Doc. No. 16, pg. 16). Plaintiff also argues that his mental health records indicate he could manage his emotions until February 2017. (Doc. No. 16, pg. 17 (citing R. 1088)). The Court construes this argument as a request to limit what the ALJ may consider, largely to the exclusion of Plaintiff's treatment timeline. The Court will not do so.

A claimant's course of treatment is relevant to an ALJ's assessment of symptoms, and, when evaluating claimants' symptoms, ALJs consider whether treatment is proportionate to the symptoms alleged. SSR 16-3p. There are some circumstances that may explain why a claimant's course of treatment appears to be less serious that his claimed symptoms. SSR 16-3p (suggesting the lack of low-cost services, inability to understand an impairment, or a misunderstanding concerning the necessity of treatment may explain failure to seek or follow treatment); *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003) (faulting the ALJ for finding the claimant would have sought treatment earlier if she experienced the "degree of pain and functional limitation" that was alleged where the claimant explained she could not afford treatment and her explanation was corroborated by evidence of her low income and lack of medical insurance). However, Plaintiff's only explanation for the delay between onset and treatment was that he could "deal with" his mental health issues until February 2017. (Doc. No. 16, pg. 17 (citing R. 1088)). Therefore, contrary to Plaintiff's argument, it was not inappropriate for the ALJ to consider the delay in treatment in his assessment of Plaintiff's symptoms. Further, Plaintiff's delay of treatment was just one of several factors that led the ALJ to find Plaintiff lacked consistency and reliability. (R. 21).

3

Plaintiff also argues that the ALJ inappropriately inferred "that [he] somehow faked his way into an admission to the Highlands Hospital Behavioral Health unit." (Doc. No. 16, pg. 18). Plaintiff maintains that, to the contrary, the evidence shows his mental health in decline leading up to that hospitalization. (Doc. No. 16, pg. 18). Were the Court to independently review and weigh the evidence, there is some support in the record for Plaintiff's preferred narrative. (R. 871 (documenting Plaintiff rating his depression at a 5/10 in May 2018); R. 855 (documenting Plaintiff rating his depression at a 4 or 5/10 in July 2018); R. 851 (documenting Plaintiff rating his depression at a 6/10 in early August 2018 and noting a passive death wish); R. 847 (documenting Plaintiff rating his depression at an 8/10 in mid-August 2018); R. 843 (documenting Plaintiff rating his depression at a 10/10 in September 2018 just before the hospitalization); R. 841 (documenting Plaintiff's passive suicidal ideation just before his hospitalization)). However, this Court's role is not to reweigh the evidence and come to its own conclusions, but to ensure the ALJ's conclusions are adequately supported. *Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990); *Davis v. Astrue*, 830 F. Supp. 2d 31, 34 (W.D. Pa. 2011) ("If the decision is supported by substantial evidence, the Court must affirm the decision, even if the record contains evidence which would support a contrary conclusion.").

Turning to the ALJ's consideration of Plaintiff's hospitalization, the Court finds, as an initial matter, that there was no impropriety in the ALJ's observation that it closely coincided with his receipt of notice of his upcoming hearing. ALJs are permitted to consider that a claimant may have "ulterior motives" for certain actions. *Hutchins v. Astrue*, No. CIV.A. 11-122, 2012 WL 995274, at *1 n.1 (W.D. Pa. Mar. 23, 2012) (explaining it was not "improper for the ALJ to consider" that the claimant was "faking his pain" for financial gain). Further, the ALJ found Plaintiff's hospitalization contributed to a finding of inconsistency for reasons other than its coincidence with the hearing notice, such as the hospitalization's voluntary nature and Plaintiff's relatively stable condition upon admittance. (R. 21 (citing R. 792 wherein the attending physician, Dr. Jahangeer, noted Plaintiff's mental health diagnoses and nightmares, but further recorded a lack of "acute medical problems")). These details of the hospitalization were appropriate for the ALJ's consideration and support his finding that Plaintiff's medical records sometimes lacked the seriousness one might expect based on Plaintiff's representations.

Plaintiff relatedly argues that the ALJ's consideration of his hospitalization is indicative of the ALJ's more general failure to fully consider Plaintiff's mental health treatment records, particularly those from CRCS. (Doc. No. 16, pg. 18). The Court again finds no such defect. Though ALJs are required to consider the entire record and provide an analysis that is thorough enough to permit review, that responsibility does not beget an expectation that ALJs will "make reference to every relevant treatment note." *Fargnoli v. Massanari*, 247 F.3d 34, 41—42 (3d Cir. 2001). From the ALJ's decision, it is clear he considered Plaintiff's CRCS records. The ALJ noted important observations in those records, such as Plaintiff's complaint that he had seen "horrific" things as a police officer and had frequent nightmares, his feelings of numbness in response to traumatic events, and stress stemming from his son's substance abuse and his family's financial difficulties. (R. 21 (citing Ex. 24F, R. 814—1143)). Those observations and complaints are oft repeated in the approximately 330 pages of CRCS records. (R. 1137—38

4

---

(indicating Plaintiff was referred to CRCS for services in February 2017 at which time he described feeling numb for much of his life, witnessing "horrific" things during his time as a police officer, difficulty sleeping and nightmares, and depression that he rated at 8/10); R. 1126 (Plaintiff indicating unemployment since November 2016, experiencing nightmares about three times each week, sleep problems for about six years, and depression); R. 1067 (Plaintiff rating his depression at a 3/5 in March 2017 and indicating he was experiencing night terrors nightly); R. 926 (Plaintiff describing stress from financial difficulties and his son's behavior, as well as rating his depression as a 6/10 in October 2017); R. 912 (Plaintiff rating his depression as 7/10 in December 2017); R. 875 (Plaintiff indicating a recent increase in energy for activities like cutting grass and putting his depression at a 4 to 5/10 in April 2018); R. 855 (Plaintiff reporting nightmares every other day but a general decrease in depression in July 2018); R. 847 (Plaintiff rating his depression at 8/10 in August 2018); R. 816 (Plaintiff indicating feeling better after his medications were adjusted during his hospitalization and rating his depression as a 7/10 in late September 2018)). Although the ALJ did not reference each entry in the CRCS records, it is clear he considered Plaintiff's symptoms as recorded therein. In the decision, he adequately cited the parts of the record that led to his finding that Plaintiff's representations of symptoms were inconsistent.

Plaintiff also argues that the ALJ should not have found Plaintiff's personal stressors—familial and financial—detracted from Plaintiff's mental health symptoms. (Doc. No. 16, pgs. 18—19). As explained above, ALJs consider all relevant evidence, *Fargnoli*, 247 F.3d at 41, but are careful when evaluating alleged symptoms to ensure such symptoms are grounded in "medically determinable impairment[s]." *Baum*, 2017 WL 1090790, at *1 n.1. Where, as here, mental health records indicate instances where a claimant's symptoms are, to an extent, attributable to family and financial stress, the ALJ does not err in noting that as a consideration in his assessment of Plaintiff's symptoms.

Plaintiff next argues that the ALJ relied on some of Plaintiff's doctors' mental health findings without acknowledging those doctors' lack of mental health specialization. (Doc. No. 16, pg. 19). Plaintiff points to Dr. Ball—the surgeon who consulted on Plaintiff's gall bladder surgery—and the ALJ's reference to Dr. Ball's "negative" psychiatric finding in March 2016. (R. 21 (citing R. 277)). Plaintiff also points out the ALJ's citation of his neurologist's finding in March 2018 that Plaintiff was "alert, fully oriented, and had intact recent and remote memory, good insight and judgment." (R. 21 (citing R. 598)). Plaintiff additionally notes that the ALJ did not acknowledge his neurologist's inclusion of anxiety, depression, and sleep disturbance among the doctor's review of systems. (Doc. No. 16, pg. 19). Plaintiff contends that the ALJ should have acknowledged these doctors' limitations, and that the doctors' findings cannot constitute substantial evidence concerning the extent of symptoms arising from his mental health impairments. (Doc. No. 16, pg. 19). However, while those doctors' findings would likely not constitute substantial evidence alone, any statement from a medical source is relevant to an ALJ's inquiry into symptom severity. SSR 16-3p. Therefore, it was not inappropriate of the ALJ to consider the absence of any significant mention of Plaintiff's mental health impairments and symptoms in Plaintiff's physical health records. That the ALJ omitted mention of each

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 15) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 17) is GRANTED in part and DENIED in part, as specified above.

/s Alan N. Bloch
United States District Judge

---

physician's specialty does not affect the Court's assessment in this regard.  *See Fargnoli*, 247 F.3d at 41—42 (explaining that ALJ decisions must include enough detail that reviewing courts "may know the basis for the decision," but not "every relevant treatment note").

Beyond failing to adequately consider the record as it stood, Plaintiff further argues that the ALJ should have sought additional evidence in the form of a consultative examination of Plaintiff's mental health.  Plaintiff alleges the lack of such a consultative examination led the ALJ to rely on his own lay opinion concerning Plaintiff's functional limitations.  (Doc. No. 16, pgs. 20—21).  However, ALJs have discretion to determine whether a consultative examination is necessary.  *Carter v. Colvin*, No. CIV.A. 2:14-1498, 2015 WL 1866208, at *10 (W.D. Pa. Apr. 23, 2015).  And here, the record concerning Plaintiff's alleged mental health impairments and symptoms was developed enough for a disability determination without a consultative examination.  Therefore, the Court neither finds the ALJ failed to adequately develop the record, *id.* at *11, nor improperly relied upon his own lay opinion.  *See Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009) (explaining that the ALJ ultimately determines the extent of a claimant's functional limitations for the residual functional capacity determination and does not require a medical opinion for that finding).

Plaintiff's remaining contentions require only brief discussion.  Plaintiff argues that the ALJ failed to cite any evidence in support of his finding that Plaintiff suffered from no more than moderate functional limitations due to his mental health impairments.  (Doc. No. 16, pg. 16).  However, from the decision it is clear that the ALJ's finding of no more than moderate persistent limitations in the four "domains" of function is based on the evidence cited just above that finding concerning Plaintiff's inconsistent representation of his symptoms.  (R. 21).  Additionally, Plaintiff has not identified which domain required a finding of more than moderate limitation or cited supporting evidence.  Lastly, Plaintiff argues that because the ALJ erred in evaluating his symptoms, the ALJ's RFC determination is inherently flawed and tainted the ALJ's determination—with the vocational expert's assistance—that work is available for an individual of Plaintiff's abilities.  (Doc. No. 16, pg. 21).  However, as the Court has found no such foundational error, it need not address the alleged consequent error.  *Covone v. Comm'r Soc. Sec.*, 142 F. App'x 585, 587 (3d Cir. 2005) ("Although claimant argues that the hypothetical question posed by the ALJ does not adequately represent her functional limitations, it is apparent that the hypothetical in fact directly tracks the RFC finding. The claimant's challenge, therefore, amounts to an argument that the ALJ's determination of her RFC is not supported by substantial evidence.").  For these reasons, summary judgment shall be granted in Defendant's favor.

ecf:    Counsel of Record